**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CYNTHIA A. GUMBA, A/K/A CYNTHIA A. SCHATZ-GUMBA, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>LEAFFILTER NORTH OF NEW JERSEY, LLC, et al.,<br><br>                    Defendants. | Civil Action No. 23-1979 (GC) (DEA)<br><br>**OPINION** |

**CASTNER, District Judge**

THIS MATTER comes before the Court upon Defendant LeafFilter North of New Jersey, LLC's Motion to Dismiss (ECF No. 21) the Complaint filed by Plaintiff Cynthia A. Gumba, individually and on behalf of all others similarly situated (ECF No. 1-1), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff opposed, and Defendant replied. (ECF Nos. 25 & 27.) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' motion is **GRANTED**.

## I.    BACKGROUND

### A.  Factual Background[1]

Defendant is a "gutter protection company" that has serviced "hundreds if not thousands

---

[1]    On a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in the Complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

of . . . New Jersey residents."  (ECF No. 1-1 ¶¶ 12-13.)  Plaintiff, who was "in search of gutter installation services," saw Defendant's television commercial offering "one or more discounts . . . such as an approximately 15% discount" off Defendant's services.  (*Id.* ¶¶ 15-17.)  The advertisement did not qualify the discount as applying only to specific materials.  (*Id.* ¶ 18.) Around that time, Plaintiff received printed advertisements from Defendant that contained "various promotional terms," such as offering fifteen percent off customers' entire purchase, and ten percent off for "seniors."  (*Id.* ¶¶ 19-20.)  At least some of the printed notices did not qualify the discount as applying only to specific materials.  (*Id.* ¶ 22.)  The notices also recited Defendant's "license number" in "tiny print . . . that . . . was less than 9 point" font.  (*Id.* ¶ 21.)

In July 2021, "induced by the advertisement," Plaintiff called Defendant and arranged for a salesperson to visit Plaintiff's home and provide an estimate for gutter installation.  (*Id.* ¶ 23.)  A salesperson visited the property and presented Plaintiff with a contract listing a price of $1,029.00 for "[c]ompletely installing new 5 in white gutters . . . [a]ligning and sealing as needed."  (*Id.* ¶ 26.)  "[A]t the time of the sale," Plaintiff asked about the discounts, and the salesperson "falsely told [Plaintiff] that the discount didn't apply to the services."  (*Id.* ¶¶ 29-30.)  The contract stated "'PRICE includes all taxes, discounts and coupons," but "the actual amounts of the aforesaid taxes, discounts and coupons" were not listed anywhere on the contract.  (*Id.* ¶ 26.)  Plaintiff alleges that she was "in no position to determine whether [Defendant] ever applied any discounts" or, if Defendant did so, exactly how any taxes or discounts figured into the final price.  (*Id.* ¶ 27.) Plaintiff signed the contract and paid in full that same day.  (*Id.* ¶¶ 25, 28.)

Several days later, Plaintiff sent a text message to the salesperson, asking again about the discount.  In the text message, Plaintiff mentioned that although the salesperson had told her that the discount applied only to "guards," Defendant's website instructed customers to "ask about the

10% [discount]."  Plaintiff also mentioned that when she had previously called Defendant's office, a representative had told her that the discount was "good on everything."  (*Id.* ¶ 31.)  The salesperson responded that he had in fact mistakenly quoted the services "under cost," and that the true cost would be $1,057.00.  But he advised that Plaintiff could cancel if she wished.  (*Id.* ¶ 32.)  The salesperson later agreed to perform the service for the originally quoted price, though no further discount would apply, as the service was already priced "at cost."  (*Id.*)  Plaintiff pressed, reiterating the commercial's 15%-off offer, the website's 10%-off offer, and the representative's assurance that the discount applies to everything.  (*Id.* ¶ 33.)  Plaintiff stated, "I feel like I'm being taken for a ride."  (*Id.*)  The salesperson replied that "you don't have to get the job if you feel uncomfortable in any way. . . .  So whatever you decide to do is fine."  (*Id.* ¶ 34.)  Plaintiff chose to proceed with the services.  (*See id.* ¶ 39.)

Plaintiff contends that Defendant "initially fraudulently advertised the services as being offered at the price; (2) agreed via the contract to sell the services at the price; and (3) to deprive [Plaintiff] of the discount, subsequently fraudulently claimed that the services were valued at a sum higher than the price, so that the discount couldn't be secured by [Plaintiff]."  (*Id.* ¶ 36.)  According to Plaintiff, at the time of the sale, she was entitled to a discount of either 15% off the price ($154.35) or 15% off the price plus another 10% discount for being a senior citizen ($241.81).  (*Id.* ¶ 37.)  Thus, she overpaid for her services in an amount between $154.35 and $241.81.  (*Id.* ¶ 39.)

### B.  Procedural History

Plaintiff filed the Complaint on behalf of herself and a putative class action in the Superior Court of New Jersey.  (ECF No. 1 ¶ 1.)  Counts One through Three allege violations of the New Jersey Consumer Fraud Act (CFA), N.J. Stat. Ann. § 56:8-1 *et seq.*  (ECF No. 1-1 ¶¶ 135-207.)

Count Four alleges violations under the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J. Stat. Ann. § 56:12-14 to -18.  (*Id.* ¶¶ 208-230.)  Counts Five is for Breach of Contract, Count Six is for Breach of the Covenant of Good Faith and Fair Dealing, and Count Seven is for Promissory Estoppel.[2]  (*Id.* ¶¶ 231-272.)  Defendant timely removed the case. (ECF No. 1 ¶¶ 5-6.)[3]

## II.   <u>STANDARD OF REVIEW</u>

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a

---

[2]     Count Eight, brought under the New Jersey's Uniform Declaratory Judgment Law (UDJL), N.J. Stat. Ann. § 2A:16-50 *et seq.*, was voluntarily dismissed by Plaintiff.  (ECF No. 20.)  Count Nine incorporates all claims against Defendants John Does.  (ECF No. 1-1 ¶¶ 273-275.)

[3]     The Court has subject-matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The parties are minimally diverse under § 1332(d)(2)(A) because Plaintiff is a citizen of New Jersey (ECF No. 1-1 ¶¶ 8-9); Plaintiff limits the proposed class to citizens of New Jersey (*id.* ¶ 43-44); and Defendant is a citizen of Ohio (ECF No. 1 ¶ 11).  The proposed class exceeds one hundred members as required under § 1332(d)(5)(B).  (*Id.* ¶ 18; ECF No. 1-1 ¶ 56.)  And pursuant to § 1332(d)(2), Defendant's notice of removal plausibly alleges that the amount in controversy exceeds $5 million, exclusive of interests and costs, after adding up the value of the claim of each person falling within the definition of the proposed class.  (ECF No. 1 ¶¶ 19-28.)  *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020).

## III.   DISCUSSION

### A.   Count One – Violation of the CFA, N.J. Stat. Ann. § 56:8-2.2

To state a prima facie case under the CFA, a plaintiff must allege three elements: "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009) (citations omitted).

"Unlawful conduct under the NJCFA falls into three general categories: 'affirmative acts, knowing omissions, and violation of regulations promulgated under N.J. Stat. Ann. §§ 56:8–2, 56:8–4.'" *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 333-34 (D.N.J. 2014) (quoting *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 648 (D.N.J. 2013)). Claims under the CFA "are required to meet the particularity requirement of Fed. R. Civ. P. 9(b), which requires more than the *Twombly-Iqbal* standard; including notice of the precise misconduct with which [defendant is] charged." *Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 301 (D.N.J. 2019) (internal citations and quotations omitted). The complaint must "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* (citation omitted).

In Count One, Plaintiff alleges a regulatory violation of the CFA under N.J. Stat. Ann. § 56:8-2.2. (ECF No. 1-1 ¶¶ 135-139.) Section 56:8-2.2 prohibits a party from advertising an item

or service and then refusing to "sell the item or service so advertised or not to sell the same at the advertised price."  Plaintiff alleges that Defendant, by offering its services at a discount between ten and fifteen percent and then refusing to apply any discount, refused to sell the "service so advertised."  (*Id.* ¶ 138.)

Defendant primarily argues that provision does not apply to the alleged misconduct, because the statute's plain language can be interpreted only as prohibiting advertisement of "an item or service for a *specific* amount of money, and then failing to sell it for that amount."  (ECF No. 21-1 at 15 (emphasis added).)[4]  Because Plaintiff has not accused Defendant of falsely advertising a specific price that it refused to honor, Defendant argues that specific provision is inapplicable.  (*Id.* at 14.)

No court in New Jersey appears to have directly answered the question whether § 56:8-2.2 can apply only where a defendant falsely advertises merchandise for a specific amount of money. This Court need not answer it now.  Even if § 56:8-2.2 applies to these circumstances, Plaintiff has not plausibly alleged an ascertainable loss or a causal connection between her loss and Defendant's alleged misconduct.[5]  *See* § 56:8-19 (stating that any person "who suffers any ascertainable loss . . . as a result of . . . any method, act, or practice declared unlawful under this act . . . may bring an action").  Failing to allege an ascertainable loss and causal connection is fatal to Plaintiff's claim. *Bosland*, 964 A.2d at 749 ("Each of the elements of the prima facie case [under the CFA] is found within the plain language of the statute itself; each is, without any question, a prerequisite to suit.").

---

[4]     Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[5]     *See Hoffman v. Macy's, Inc.*, 2011 WL 6585, at *2 (N.J. Super. Ct. App. Div. Jun. 28, 2010) (declining to rule on the lawfulness of the defendant's conduct because even if the plaintiff had sufficiently pled that the defendant committed unlawful conduct, dismissal was proper due to plaintiff's failure to plead an ascertainable loss caused by defendant's conduct).

The Court will address both in turn.

### 1. Ascertainable Loss

"There are at least three recognized theories of ascertainable loss that may apply to a NJCFA claim." *Hammer v. Vital Pharms., Inc.*, Civ. No. 11-4124, 2012 WL 1018842, at *8 (D.N.J. Mar. 26, 2012). The first theory, an "out-of-pocket" loss, applies where plaintiffs allege that the defendant's misconduct caused them to purchase a worthless product or required them to spend additional money, such as the cost of repairing a defective product. *Annecharico v. Raymour & Flanigan*, Civ No. 16-1652, 2016 WL 7015615, at *7 (D.N.J. Nov. 30, 2016). The second, the "loss-in-value" or "benefit of the bargain" theory, applies where a "consumer is misled into buying a product that is ultimately worth less than the product that was promised." *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015). "Under the third theory, an 'ascertainable loss' can include a nominal overcharge for which the plaintiffs have not made a 'pre-suit demand for a refund.'" *Hammer*, 2012 WL 1018842, at *8 (citing *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 751 (N.J. 2009)).

Here, Plaintiff has not pled an out-of-pocket loss, as she does not allege that Defendant's gutters or installation services were worthless or that they contained some deficiency requiring her to spend additional money. *Compare Mladenov*, 124 F. Supp. 3d at 375 (plaintiffs did not plead an out-of-pocket loss because they did not allege that the bakery products they purchased were worthless), *with Lee v. Carter-Reed Co., L.L.C.*, 4 A.3d 561, 580 (N.J. 2010) (finding that plaintiff pled an "out-of-pocket loss" when alleging that a dietary supplement provided none of the advertised benefits). Instead, Plaintiff appears to assert benefit-of-the-bargain and overcharge loss theories. (*See* ECF No. 1-1 ¶¶ 39-40 ("[Plaintiff] suffered harm, overpaying for the services . . . [and] failed to receive the benefit of the bargain fraudulently offered by defendants as aforesaid,

as plaintiffs were entitled to but failed to receive the discount.").)

Neither theory is availing here. The benefit-of-the-bargain theory requires that a plaintiff be "misled into buying a product that [was] ultimately worth less than the product that was promised." *Mladenov*, 124 F. Supp. 3d at 375; *see also Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99-101 (D.N.J. 2011) (plaintiffs pled a "benefit-of-the-bargain" loss when they purchased low-sodium soup for a higher price than regular soup, but the low-sodium soup had the same amount of sodium as regular soup and was thus worth less than advertised). But here, Plaintiff does not allege that the gutters or services she received were worth less than what she paid for.

Nor can Plaintiff allege that she received a service "worth less than the [service] that was promised," where she purchased the service at the only price that Defendants ever offered to her. *See Mladenov*, 124 F. Supp. 3d at 375. In *Hoffman v. Macy's, Inc.*, for example, the plaintiff purchased an espresso machine for its advertised price of $299.99. 2011 WL 6585, at *1 (N.J. Super. Ct. App. Div. Jun. 28, 2010), *cert. denied*, 6 A.3d 441 (N.J. 2010). The plaintiff was told verbally and through advertisements that such a price was "well below its 'regular price' of $625.00 . . . and well below its . . . MSRP of $499.99," statements which plaintiff alleged were false. *Id.* The plaintiff claimed that because the machine had never been sold for $625.00 and had an MSRP below $499.99, she suffered an ascertainable loss because she "received less than what was promised by defendant," i.e., an espresso machine at a highly discounted price. *Id.* The court rejected her argument, finding that the defendant "deliver[ed] the espresso machine at the advertised price," and therefore "[t]he claim that defendant misrepresented the MSRP or 'regular price' of this item provides no basis for establishing an 'ascertainable loss.'" *Id.* at *4.

Here, too, Plaintiff only ever paid the price that was initially offered to her — $1,029.00.

(ECF No. 1-1 ¶¶ 24, 28.)   Plaintiff claims that later, Defendant, "to deprive [Plaintiff] of the discount, subsequently fraudulently claimed that the services were valued at a sum higher than" $1,029.00.   (*Id.* ¶ 36.)   But even if Plaintiff's statements are true, Plaintiff's "claim that defendant misrepresented the . . . 'regular price'" of its services," like the plaintiff's in *Hoffman*, "provides no basis for establishing an 'ascertainable loss'" where Defendant delivered its services at the only price that it ever offered to Plaintiff.  2011 WL 6585, at *4.

Second, Plaintiff has not alleged the type of "overcharge" sufficient to state an ascertainable loss under the CFA.  The New Jersey Supreme Court recognized this theory of ascertainable loss in *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741 (N.J. 2009).  There, while purchasing a new vehicle, the plaintiff paid a $117 "Registration Fee" that she later learned was higher than the Motor Vehicle Commission's title and registration fees, and included a separate undisclosed fee in violation of a specific regulation.  *Id.* at 744-45.  The court found that the overcharge was an ascertainable loss, and that the "causal nexus element" of a prima facie case under the CFA did not require plaintiff to ask for a refund before initiating her lawsuit.  *Id.* at 750.

By contrast, Plaintiff does not allege that Defendant unlawfully charged her for any unjustified fees or expenses.  She merely alleges that she "overpa[id]" because Defendants should have applied the discount that Defendants had advertised.  (*See* ECF No. 1-1 ¶ 39.)  This allegation does not reasonably imply the type of "overcharge" recognized as an ascertainable loss in *Bosland*, especially given that, as detailed below, Plaintiff has failed to plead a causal relationship between her loss and the alleged misconduct.

### 2. *Causation*

"To establish causation, a consumer merely needs to demonstrate that he or she suffered an ascertainable loss as a result of the unlawful practice."  *Hammer*, 2012 WL 1018842, at *9

(quoting *Lee*, 4 A.3d at 577) (internal quotations omitted).  Allegations that sufficiently plead causation include "that a plaintiff would not have purchased a product had it been accurately labeled or that [plaintiff] purchased the product because of the misleading claim." *Mladenov*, 124 F. Supp. 3d at 377 (citing *Stewart v. Smart Balance, Inc.*, Civ. No. 11-6174, 2012 WL 4168584, at *11 (D.N.J. Jun. 26, 2012) (collecting cases)); *Smajlaj*, 782 F. Supp. 2d at 100 (finding a causal nexus between the unlawful conduct and plaintiff's loss because plaintiffs would not have purchased the more expensive low-sodium soup had they known that it had the same amount of sodium as regular soup).

Here, contradictions in Plaintiffs' allegations preclude a causation finding.  Plaintiff alleges that the advertised discounts induced her to call Defendant and arrange "for a salesperson to come to the property to view the house and provide a price for the services."  (ECF No. 1-1 ¶ 23.) Plaintiff also alleges that her contract with Defendant named a price that purported to "include[] all taxes, discounts, and coupons," but because the contract did not break down any applicable taxes or discounts, Plaintiff was "in no position to determine whether [Defendant] ever applied any discounts."  (*Id.* ¶¶ 26-27.)  But the Complaint contains contradictory allegations where Plaintiff also alleges that "at the time of the sale, [Plaintiff] asked [Defendant] and/or the salesperson about . . . the discount. . . . However, the salesperson falsely told [Plaintiff] that the discount didn't apply to the services."  (*Id.* ¶¶ 29-30.)  The advertised discounts cannot possibly have induced Plaintiff to purchase Defendant's services if "at the time of the sale" she was told that the advertised discounts did not apply to her sale.  Therefore, Plaintiff has not sufficiently alleged a causal connection between the alleged misconduct (misleading advertisement) and her alleged harm (failure to receive a discount).

Plaintiff cites *Bosland* and *Green v. Morgan Properties*[6] for the proposition that the New Jersey Supreme Court has held merchants liable "after overcharging for services via contracts even where the consumer willingly entered into the contracts." (ECF No. 25 at 32.)  But both cases are distinguishable from this case.  In *Bosland*, when the plaintiff paid the $117 fee, she did not know that it was higher than the actual fees charged by the Motor Vehicle Commission and included an illegal undisclosed fee.  964 A.2d at 744, 750.  By contrast, Plaintiff here was aware "at the time of the sale" that none of the advertised discounts applied to her contract.  (ECF No. 1-1 ¶¶ 29-30.)  And in *Green*, plaintiff tenants had entered into leases that contained allegedly unlawful provisions about attorneys' fees.  73 A.3d at 491.  But their CFA claims survived partly because the leases were "lengthy, pre-printed forms that, like most residential leases, are contracts of adhesion. . . . [T]here is no basis in the record to conclude, at this preliminary juncture, that plaintiffs negotiated, or had the opportunity to negotiate, about the amounts included as attorneys' fees."  *Id.*  Here, on the other hand, Plaintiff does not allege that her contract with Defendant was the type of lengthy contract of adhesion that did not allow for negotiation in *Green*.  To the contrary, Plaintiff was advised that the discount did not apply and was given the opportunity not to move forward with the installation of the gutters.  Plaintiff chose otherwise.

Because Plaintiff has not plausibly pled that she would not have entered into the contract "but for" the alleged unlawful conduct, she has not sufficiently pled a causal nexus.  Even if Plaintiff's allegations are accepted as true and viewed in a light most favorable to her, Plaintiff's claim lacks the type of causal connection necessary to establish a prima facie case under the CFA.  *See, e.g.*, *Dicuio v. Brother Intern. Corp.*, Civ. No. 11-1447, 2012 WL 3278917, at *8-9 (D.N.J. Aug. 9, 2012) (finding a causal nexus where plaintiffs pled that they would not have purchased

---

[6]        73 A.3d 478 (N.J. 2013).

printer ink cartridges had they known of the product's defect); *Est. of Cotton v. Senior Planning Servs., LLC*, Civ. No. 19-8921, 2020 WL 7022740, at *18 (D.N.J. Nov. 30, 2020) (plaintiffs adequately pled causation because they would not have contracted with defendant but for defendant's misrepresentations about the types of services they provided); *Mason v. Coca-Cola Co.*, Civ. No. 09-0220, 2010 WL 2674445, at *7 (D.N.J. Jun. 30, 2010) (plaintiffs sufficiently pled causation because they would not have purchased "Diet Coke Plus" but for the misleading label in violation of FDA regulations); *Pontrelli v. MonaVie, Inc.*, Civ. No. 13-4649, 2014 WL 4105417, at *6 (D.N.J. Aug. 19, 2014) (finding a causal relationship as a result of an unlawful practice because "Plaintiff alleges that as a result of Defendants' false advertisements, she paid a premium for a product that did not provide the health benefits as advertised and would not have purchased the product had it not provided those benefits").  Absent allegations with sufficient factual matter to establish an ascertainable loss and a causal nexus to the misconduct, the Court dismisses Count One of Plaintiff's Complaint without prejudice.[7]

### B.  Count Two – Violation of the CFA under the CRA, HICR, and the HIP Act

In Count Two, Plaintiff alleges that Defendant violated multiple specific subsections of three of the CFA's statutory and administrative codes: the Contractors' Registration Act (CRA), N.J. Stat. Ann. § 56:8-136 *et seq.*; the Home Improvement Practices Act (HIP), N.J.A.C. 13:45A-16.1 *et seq.*; and the Home Improvement Contractor Registration regulations (HICR), N.J.A.C. 13:45A-17.1 *et seq.*   (ECF No. 1-1 ¶ 142-145.)   These statutes and regulations "create[] a framework within the [CFA] that regulates contractors who are engaged in the business of making

---

[7]     The Court dismisses Plaintiff's Complaint without prejudice to the extent that Plaintiff can cure the deficiencies identified herein.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 ("[A] district court must permit a curative amendment unless such an amendment would be inequitable or futile.").

or selling home improvements." *Caron v. Graber Supply LLC*, Civ. No. 17-00631, 2017 WL 3498939, at *2 (D.N.J. Aug. 15, 2017).

Defendant argues that Plaintiff has not sufficiently pled violations of several of the asserted statutory provisions. (ECF No. 21-1 at 18-19.) As to the remaining provisions, Defendant argues that even if Plaintiff has sufficiently alleged violations of "certain technical requirements," Plaintiff's claims still fail because she has not alleged that those technical violations caused an ascertainable loss. (*Id.* at 19-22.) The Court will address each of the asserted provisions in turn.

### 1. *HIP Act Violations*

Plaintiff alleges that Defendant violated four specific provisions of the HIP Act. (ECF No. 1-1 ¶¶ 164-166.)

First, Plaintiff alleges that by falsely claiming that the original price was misquoted to deprive Plaintiff of a discount, Defendant's salesperson violated N.J.A.C. 13:45A-16.2(a)(6)(viii). (ECF No. 1-1 ¶ 165.) That provision prohibits the "[m]isrepresent[ation] or fail[ure] to disclose that the offered or contract price does not include all financing charges, interest service charges, credit investigation costs, building or installation permit fees, or other obligations, charges, cost or fees to be paid by the buyer." (*Id.*) But Plaintiff does not allege that Defendant's original estimate of $1,029.00 failed to disclose any additional fees, charges, or interest that Plaintiff would need to pay. She alleges merely that Defendant later told her that the original price of $1,029.00 was "under cost" because he "did the math wrong." (ECF No. 1-1 ¶ 32.) Even if these statements were fraudulent, as Plaintiff alleges, they do not amount to the type of violation prohibited by N.J.A.C. 13:45A-16.2(a)(6)(viii) under the      plain language of that provision. Therefore, Plaintiff does not sufficiently plead a violation of this provision.

Next, Plaintiff contends that by fraudulently claiming that the original price was "under

cost," Defendant violated N.J.A.C. 13:45A-16.2(a)(9)(ii), which prohibits "[k]nowingly fail[ing] to make any material statement of fact, qualification or explanation if the omission of such statement, qualification or explanation causes an advertisement, announcement, statement or representation to be false, deceptive or misleading." (ECF No. 1-1 ¶ 166.) But Plaintiff does not specify any information that Defendant knowingly failed to disclose, as required to state this claim. *See, e.g.*, *Romond v. Valiant Home Remodelers*, 2007 WL 2362853, at *10 (N.J. Super. Ct. App. Div. Aug. 21, 2007) (finding that a jury could have found that seller violated this provision by failing to notify buyers that the appearance of window mullions was different than what the buyers had ordered from a brochure). Nor does Plaintiff explain how Defendant's statements about the original price being "under cost," even if fraudulent, could constitute a knowing "omission" under this provision. In circumstances constituting fraud, Rule 9(b)'s heightened pleading standard requires Plaintiff to plead not only the "who, what, when," and "where" of the events at issue, but also the "how." *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir.2006) (citations omitted). Plaintiff has not sufficiently pled how Defendant's actions violated this regulation.

Plaintiff next alleges that Defendant violated the HIP Act "by selling the services at a supposed 'discount' when in fact no real discount was ever in effect." (ECF No. 1-1 ¶ 164.) In support, Plaintiff points to subsections (i) and (ii) of N.J.A.C. 13:45A-16.2(a)(6). (*Id.*)

The Court turns first to subsection (ii), which prohibits misrepresenting that "any person, firm or organization . . . is especially interested in seeing that the prospective buyer gets a bargain, special price, discount or any other benefit or concession." N.J.A.C. 13:45A-16.2(a)(6)(ii). By its plain language, this provision does not apply here. Plaintiff has not alleged that Defendant, its representatives, or anyone else told Plaintiff that they were "especially interested" in getting

Plaintiff a special price, bargain, or discount.  Plaintiff accuses Defendant of generally advertising discounts with some qualifiers, such as 10% off for "seniors," and later refusing to apply the discount for reasons not apparent in the advertisements.  (*See* ECF No. 1-1 ¶¶ 20, 30.)  But nowhere in her Complaint does Plaintiff allege that anyone claimed to be "especially interested" in providing Plaintiff with a discount.

Next, subsection (i) prohibits sellers from misrepresenting to a prospective buyer that "an introductory, confidential, close-out, going out of business, factory, wholesale, or any other special price or discount is being given, or that any other concession is made because of a market survey or test, use of materials left over from another job, or any other reason."

Here, Defendant's advertisements offered discounts that appeared to apply to Plaintiff, but Defendant later withheld the discounts for a reason not obvious in the advertisements — specifically, that the advertised discounts applied only to certain materials or services.  (*See* ECF No. 1-1 ¶¶ 20, 30.)  Thus, Plaintiff alleges, Defendant was "selling the services at a supposed 'discount' when in fact no real discount was ever in effect," (*id.* ¶ 164), in violation of N.J.A.C. 13:45A-16.2(a)(6)(i).  But Plaintiff does not allege with the heightened specificity required under Rule 9(b) how the "supposed discount" meets the circumstances contemplated by the plain language of subsection (i)—namely, that a misrepresentation was made related to the "supposed discount."  *See In re Suprema*, 438 F.3d at 276-77.  Thus, Plaintiff has not sufficiently pled a violation of this regulation.

### 2.  *HICR and CRA Violations*

Plaintiff alleges that Defendant violated multiple provisions of the HICR (N.J.A.C. 13:45A-17, *et seq.*) and CRA (N.J. Stat. Ann. § 56:8-136, *et seq.*) in three different ways.  First, Defendant did not print its Division of Consumer Affairs (DCA) registration number in its

advertisements and communications with Plaintiff, nor did it include the DCA's toll-free telephone number in its advertisements, contract, and correspondence with Plaintiff.[8]  (ECF No. 1-1 ¶¶ 168-170, 174.)  Second, the cancellation notice on Defendant's contract "differ[ed] substantially" from the cancellation notice required by law "either in the size of the typefont, capitalization of text, the lack of conspicuousness and/or otherwise."[9]  (*Id.* ¶ 180.)  And finally, Defendant failed to attach its certificate of commercial general liability insurance to the contract.[10]  (*Id.* ¶ 177.)

In response, Defendant points out that § 56:8-151 applies only to contracts, not to notices or communications as Plaintiff alleges.  (ECF No. 21-1 at 20 n.3.)  Otherwise, Defendant does not dispute the existence of these technical violations.  (*See id.* at 19-22.)

Contractors are presumed to be familiar with the CFA and its regulations.  *Cox*, 647 A.2d at 462.  And liability under the CFA does not require a showing of intent or "that the consumer actually be misled or defrauded by a merchant; any violation is enough to create liability."  *Czmyr v. Avalanche Heating and Air Conditioning, Inc.*, 2011 WL 519871, at *5 (N.J. Super. Ct. App. Div. Feb. 16, 2011).  Thus, each of these remaining violations alleged by Plaintiff "are expressly made 'unlawful practices' by the clear terms of the CRA."  *Park v. Kuken, LLC*, 2022 WL 189831, at *8 (N.J. Super. Ct. App. Div. Jan. 21, 2022) (citing § 56:8-146).  But even consumers alleging *per se* violations of the CFA must "demonstrate a loss *attributable to conduct made unlawful by the CFA*."  *Czmyr*, 2011 WL 519871, at *5 (citing *Thiedemann v. Mercedes-Benz U.S., LLC*, 872 A.2d 783, 791 (N.J. 2005)).

---

[8]    In support, Plaintiff cites N.J.A.C. 13:45A-17.11(d)(2) and (f) and N.J. Stat. Ann. §§ 56:8-144 and -151.  (ECF No. 1-1 ¶¶ 168-170, 174.)

[9]    Plaintiff cites N.J. Stat. Ann. § 56:8-151.  (ECF No. 1-1 ¶ 180.)

[10]   Plaintiff cites N.J.A.C. 13:45A-17.12 and N.J. Stat. Ann. §§ 56:8-142 and -151.  (ECF No. 1-1 ¶ 177.)

Here, Plaintiff alleges that Defendant's use of noncompliant forms "created the climate of the dispute" and prevented Plaintiff from being fully informed of her rights and Defendant's responsibilities.  (ECF No. 1-1 ¶ 188.)  Plaintiff argues that if Defendant had included the proper disclosures and language required under these regulations, Plaintiff "would have had the opportunity to inquire with the DCA into the misconduct being perpetrated."  (*Id.* ¶ 189.)

But Plaintiff fails to illustrate how Defendant's CFA violations caused an ascertainable loss.  For starters, Plaintiff does not even attempt to tie the missing certificate of insurance to any ascertainable loss.  Because no ascertainable loss is attributable to this CFA violation, Plaintiff states no claim under this provision.  *C.f. Czmyr*, 2011 WL 519871, at *6; *Castro v. Sovran Self Storage, Inc.*, 114 F. Supp. 3d 204, 220 (D.N.J. 2015) (finding that plaintiff pled an ascertainable loss related to defendant's failure to provide a certificate of insurance under the CFA because plaintiff alleged that he would not have paid insurance premiums that turned out to be "meaningless" had he been provided with copies of the insurance contracts and certificate).

Plaintiff's next argument — that she "would have had the opportunity to inquire with the DCA" had Defendant provided her with its DCA registration number and the DCA's telephone number — is exactly the type of "hypothetical or illusory" loss that courts consistently reject. *Thiedemann*, 872 A.2d at 793.

Finally, Plaintiff cannot say that she was unaware of her right to cancel the contract, given her allegations that Defendant's contract contained a cancelation notice and Defendant's salesperson informed her of her right to cancel.  (*See* ECF No. 21-1 at 21.)  Thus, Plaintiff does not explain how she suffered an ascertainable loss from the fact that Defendant's cancellation policy did not mirror the exact language in the statute or use the correct font size.  *See Czmyr*, 2011 WL 519871, at *5-6 (finding that because plaintiff evidenced an intention to go forward with the

contracted work until she later changed her mind, plaintiff could not have been harmed by defendant's failure to include the cancellation notice mandated by the CRA).  Therefore, Plaintiff has not sufficiently pled that the technical violations related to the cancellation notice caused an ascertainable loss.  *See also Josantos Const. v. Bohrer*, 740 A.2d 653, 655-56 (N.J. Super. Ct. App. Div. 1999) (finding that defendants' premature submission of a certification of completion in violation of the CFA lacked a causal connection to the defects in the work); *Veale-Middleton v. Artzberger*, 2013 WL 2257833, at *5 (N.J. Super. Ct. App. Div. May 24, 2013) (finding that defendant's failure to provide plaintiff with a cancellation notice, certification of insurance, and registration with the DCA did not cause plaintiff an ascertainable loss).

For these reasons, the Court dismisses Count Two without prejudice.

### C.  Count Three – Violation of the CFA through Unconscionable Business Practices

Plaintiff brings Count Three under N.J. Stat. Ann. § 56:8-2, which provides the CFA's general prohibition against "any unconscionable commercial practice."  (ECF No. 1-1 ¶¶ 192-207.) "There is no precise formulation for an 'unconscionable' act that satisfies the statutory standard for an unlawful practice.  The statute establishes 'a broad business ethic' applied 'to balance the interests of the consumer public and those of the sellers.'"  *D'Agostino v. Maldonado*, 78 A.3d 527, 537 (N.J. 2013) (quoting *Kugler v. Romain*, 279 A.2d 640 (N.J. 1971)).

An "unconscionable practice under the CFA 'necessarily entails a lack of good faith, fair dealing, and honesty.'"  *Id.* at 540 (citing *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir.1998)).  For example, a builder's "abominable" and "blatant substitution of substandard lumber" when building a single-family home, in violation of a contract, was deemed the type of unconscionable conduct prohibited under § 56:8-2 because the builder "took complete advantage" of the homeowner and showed "callous indifference."  *New Mea Const. Corp. v.*

*Harper*, 497 A.2d 534, 543-44 (N.J. Super. Ct. App. Div. 1985).  For another, in *Park*, the court found that defendants' technical violations of the CFA were aggravating enough to constitute "unconscionable commercial practice[s]" under § 56:8-2.  2022 WL 189831, at *9.  Specifically, defendants had used their failure to memorialize a written contract to argue that no contract existed; refused to provide plaintiff with a refund despite having failed to provide her with a cancellation notice in violation of § 56:8-151; and "repeatedly failed to provide plaintiff with a certificate of commercial general liability insurance . . . under [N.J. Stat. Ann. §] 56:8-142, and . . . when they did eventually provide a certificate, they attempted to charge plaintiff $500 for same."  *Id.*

Here, even if Plaintiff has plausibly alleged that Defendant's denial of the advertised discounts constitutes an "unconscionable business practice" amounting to an unlawful act under § 56:8-2, Plaintiff's failure to allege a causal connection to an ascertainable loss is fatal for the same reasons discussed above.  Plaintiff has not alleged that the gutters or installations she received were worthless or that they contained some deficiency requiring her to spend additional money. *See Mladenov*, 124 F. Supp. 3d at 375.  Nor has Plaintiff plausibly claimed to have received less than what was promised, as she purchased the service at the only price that Defendants ever offered to her.  *See Hoffman v. Macy's, Inc.*, 2011 WL 6585, at *4.  And because Plaintiff chose to proceed with the contract after being told that the discounts did not apply, Plaintiff cannot plausibly allege that she would not have purchased the services but for the allegedly fraudulent advertisements. Thus, Plaintiff has not sufficiently pled a causal connection between the alleged misconduct and loss.  *See Mladenov*, 124 F. Supp. 3d at 377.  Because each of these elements of a prima facie case under the CFA is a prerequisite to suit, Count Three is dismissed without prejudice.  *Bosland*, 964 A.2d at 749.

### D.  Count Four – TCCWNA Violations

The TCCWNA "prohibits a seller from entering into a contract with a consumer that includes any provision that violates a federal or state law." *Bosland v. Warnock Dodge, Inc.*, 933 A.2d 942, 949 (N.J. Super. Ct. App. Div. 2007), *aff'd*, 964 A.2d 741 (N.J. 2009).  To state a prima facie case under the TCCWNA, a plaintiff must plausibly allege four elements: first, that the defendant was a "seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid"; second, that the defendant "offered or entered into a 'written consumer contract or [gave] or display[ed] any written consumer warranty, notice or sign"; third, "that at the time that the written consumer contract is signed or the written consumer warranty, notice or sign is displayed, that writing contains a provision that 'violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee' as established by State or Federal law"; and fourth, that the plaintiff is an "aggrieved consumer." *See Spade v. Select Comfort Corp.*, 181 A.3d 969, 976 (N.J. 2018) (quoting N.J. Stat. Ann. §§ 56:12-15, -17).

Here, Plaintiff properly alleges, and Defendant does not dispute, that the TCCWNA applies to this sale because Defendant is a "seller" and the contract between Plaintiff and Defendant is subject to the statute.  (ECF No. 1-1 ¶¶ 218-222.)  Plaintiff alleges that the contract violated "state and/or federal laws or regulations" by virtue of the HIP Act, CRA, and HICR violations that Plaintiff alleged in Count Two of her Complaint.  (*Id.* ¶ 225.)  Further, Plaintiff alleges that she is an "aggrieved" consumer because, "by being deprived of such information in advance of the sale, [Plaintiff] suffered harm by being hoodwinked into purchasing the services that was not as represented and without receiving full disclosures as to [Plaintiff's] legal rights and [Defendant's] legal responsibilities . . . as well as . . . ascertainable losses . . . which are detailed above." (*Id.* ¶¶ 226-227.)

Plaintiff may premise her TCCWNA claim on violations of regulations such as those codified in the CFA. *See Spade*, 181 A.3d at 978; *Bosland*, 933 A.2d at 949 ("[A] consumer contract that violates a clearly established legal right under the CFA regulations is also a violation of the TCCWNA."). But the Court has already found that Plaintiff has failed to allege that Defendant violated the specific provisions of the CFA's HIP Act that she cites in her Complaint. Therefore, Plaintiff's TCCWNA claim cannot stand on any of those alleged violations for the same reasons discussed herein.

Accordingly, Plaintiff can premise her TCCWNA claim on only the provisions of the CRA and HICR that Defendant has violated, all of which can be fairly characterized as "omissions"— specifically, Defendant's failure to include its DCA registration numbers and the DCA's toll-free telephone number in its forms; failure to include the verbatim cancellation notice required under the regulation; and Defendant's failure to attach its certificate of insurance to its contract. (ECF No. 1-1 ¶¶ 168-170, 174, 180.)[11] Even if these alleged violations of "omission" can form the basis of a TCCWNA claim, Plaintiff must plausibly allege that she is an "aggrieved consumer." *Spade*, 181 A.3d at 976. The New Jersey Legislature's use of the word "aggrieved consumer" "distinguishes consumers who have suffered harm because of a violation [under the TCCWNA] from those who have merely been exposed to unlawful language in a contract or writing, to no effect." *Id.* at 979-80. Thus, "the term 'aggrieved consumer' denotes a consumer who had suffered some form of harm as a result of the defendant's conduct.'" *Id.* at 980.

---

[11] The Third Circuit has found that a "plain reading" of the TCCWNA "indicates that the New Jersey legislature intended TCCWNA to cover only the inclusion of illegal provisions, and not omissions." *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 135 (3d Cir. 2014). But more recently, the New Jersey Superior Court, Appellate Division, suggested that the TCCWNA may apply where an "offer to contract intentionally omits information that is at least . . . alleged to be require[d] under the law." *Cameron v. South Jersey Pubs, Inc.*, 213 A.3d 967, 989 (N.J. Super. Ct. App. Div. 2019).

Moreover, a consumer need not suffer monetary damages to be considered "aggrieved." In *Spade*, the New Jersey Supreme Court provided the example of a consumer who would have sought a refund for undelivered furniture, but did not because of unlawful "no refunds" language in the contract. *Id.* That consumer may be an "aggrieved consumer" under the TCCWNA despite the harm not being compensable by monetary damages. *Id.* at 980-81. By contrast, if that same consumer were exposed to that unlawful provision in the contract, but "the furniture was delivered conforming and on schedule" and he or she had incurred no adverse consequences, that consumer is not "aggrieved" for TCCWNA purposes. *Id.* at 981.

Here, to constitute an "aggrieved consumer" under the TCCWNA, Plaintiff must have suffered "some form of harm as a result of" the unlawful conduct on which her TCCWNA claim is premised. *See id.* at 980. But as the Court has previously found, Plaintiff has not sufficiently alleged how Defendant "hoodwinked [Plaintiff] into purchasing the services" because of Defendant's failure to furnish its certificate of insurance, its DCA registration number, the DCA's phone number, or a cancellation notice of the correct verbiage and font. (ECF No. 1-1 ¶ 227.) By her own allegations, Plaintiff received Defendant's services "conforming and on schedule" under the terms of the contract. *See Spade*, 181 A.3d at 981. Her Complaint contains no "allegations of concrete harm, such as that Plaintiff wished or attempted to cancel" her contract with Defendant but was prevented from doing so. *See Truglio v. Planet Fitness, Inc.*, 360 F. Supp. 3d 274, 280 (D.N.J. 2018). Therefore, Plaintiff has not sufficiently pled that she is an aggrieved consumer. The Court dismisses Count Four without prejudice.

### E. Count Five – Breach of Contract

To state a prima facie case for breach of contract under New Jersey law, Plaintiff must plead (1), that "[t]he parties entered into a contract containing certain terms"; (2), that Plaintiff

"did what the contract required [her] to do"; (3), that Defendant "did not do what the contract required [it] to do"; and (4), that Defendant's breach "caused a loss" to Plaintiff. *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (internal quotations omitted) (citation omitted).

Here, Plaintiff's allegations are formulaic. She alleges that she and Defendant "were in contractual privity" and that Defendant "did not do what the contract required [it] to do or did not render performance on the contract in a timely or complete manner," and Plaintiff "suffer[ed] damages." (ECF No. 1-1 ¶¶ 235-239.) Plaintiff does not provide any factual matter to support this "formulaic recitation of the elements." *See GKE Enterprises, LLC v. Ford Motor Credit Co. LLC USA*, Civ. No. 09-4656, 2010 WL 2179094, at *3 (D.N.J. May 26, 2010). In Plaintiff's opposition brief, Plaintiff elaborates that Defendant "did not do what was promised" by "failing to provide the promised discount." As a result, Plaintiff "overpaid for the services due to [Defendant's] breach of the contract in failing to honor the discounts." (ECF No. 25 at 45.) But Plaintiff's opposition arguments do not align with her allegations in the Complaint, where she alleges that "at the time of the sale," Plaintiff was informed that no discounts applied to the sale. (ECF No. 1-1 ¶¶ 29-30.) With this information, Plaintiff signed the contract and paid Defendant the contracted price. (*Id.* ¶¶ 24, 28.) Plaintiff does not allege that the contract promised any discounts or that Defendants failed to perform the agreed-upon services. Therefore, Plaintiff has not pled facts sufficient to establish that Defendant "did not do what the contract required [it] to do." Accordingly, Count Five is dismissed without prejudice.

## F.  Count Six – Violation of the Covenant of Good Faith and Fair Dealing

"Under New Jersey law, every contract contains an implied covenant of good faith and fair dealing." *Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 531 (D.N.J. 2017). "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable

conduct in the performance of a contractual obligation." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). The facts underpinning this claim "must not arise out of the same conduct underlying an alleged breach of contract action." *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, Civ No. 12-3355, 2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013).

For this claim, Plaintiff accuses Defendant of "acting dishonestly and in a way that was unfaithful to the agreed purpose of the contract" and "engag[ing] in deception or evasion in the performance of contracts." (ECF No. 1-1 ¶¶ 250-251.) The claim fails for two reasons. First, Plaintiff bases this claim on the same allegations underpinning her breach-of-contract claim — that Defendant failed to honor the advertised discounts. In Plaintiff's opposition brief, Plaintiff asserts that she "overpaid for the services due to [Defendant's] bad faith in failing to honor the discounts" — an assertion nearly identical to her argument in support of her breach-of-contract claim. (ECF No. 25 at 45, 47-48.) Second, Plaintiff does not demonstrate that Defendant's refusal to give Plaintiff a discount, which Plaintiff knew she was not receiving when she voluntarily entered the contract, amounts to "behavior that would thwart the [Plaintiff]'s rational expectations." (*Id.* at 46 (collecting cases).) Accordingly, the Court dismisses Count Six without prejudice.

### G. Count Seven – Promissory Estoppel

To state a claim of promissory estoppel, Plaintiff must allege that "(1) there was a clear and definite promise; (2) the promise was made with the expectation that the promisee will rely on it; (3) the promisee must reasonably rely on the promise; and (4) the promisee must incur a detriment in reliance thereon." *Peck v. Imedia, Inc.*, 679 A.2d 745, 752 (N.J. Super. Ct. App. Div. 1996) (citations omitted). Promissory estoppel claims are "unavailable when a valid contract exists" and "subject to dismiss to the extent they arise from an implied promise concerning the

same subject matter as an indisputably valid contract." *Golden State Med. Supply Inc. v. AustarPharma LLC*, Civ. No. 21-17137, 2022 WL 2358423, at *5 (D.N.J. Jun. 30, 2022) (citations omitted).

Count Seven alleges that "[a]s detailed above, [Defendant] made promises to [Plaintiff]. . . about the services but failed to keep those promises as aforesaid." (ECF No. 1-1 ¶¶ 256, 259.) Plaintiff does not specify whether she is relying on the advertised discounts, or the contract she entered into with Defendant. Regardless, Plaintiff's claim cannot stand to the extent it refers to the contract, because it "arise[s] from an implied promise concerning the same matter" as a contract that Plaintiff argues is valid in Count Five. *Golden State*, 2022 WL 2358423, at *5. To the extent that Plaintiff relies on Defendant's advertisements, Plaintiff has failed to plausibly claim *reasonable* reliance on any alleged promises made by Defendant in its advertisements. Even if Plaintiff's allegations are true, Defendant informed Plaintiff multiple times — before and after the formation of a valid contract — that the sought discounts did not apply to this sale. (ECF No. 1-1 ¶¶ 29-30, 32, 34.) Accordingly, Count Seven is dismissed without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 21) is **GRANTED**. Plaintiff's Complaint (ECF No. 1-1) is **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall have thirty (30) days in which to file an Amended Complaint to the extent Plaintiff can cure the deficiencies identified in the Court's Opinion. An appropriate Order follows.

Dated: January 31, 2024

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**

25